1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOSEPH BO LEWIS,

11              Petitioner,                  No. 2:11-cv-2238 GEB CKD P

12        vs.

13   ANTHONY HEDGPETH,

14              Respondent.            FINDINGS AND RECOMMENDATIONS

15   _____/

16              Petitioner is a California prisoner proceeding pro se with a petition for writ of

17   habeas corpus under 28 U.S.C. § 2254.  He challenges Sacramento County convictions entered in

18   1998 for pimping, procuring for the purposes of prostitution and lewd and lascivious conduct.

19   Petitioner is serving a sentence of 50 years-to-life which was entered in accordance with

20   California's "Three Strikes Law."

21              On direct appeal, the California Court of Appeal described the facts presented at

22   trial as follows:

23              Defendants [petitioner and April Lynne Grayson] were driving
               from Southern California to Sacramento with a woman named
24              Lucille when they met 14-year-old Corrine, a runaway, outside a
               restaurant.  They asked Corrine if she would like to accompany
25              them, and Corrine agreed.

26   /////

1

Defendants spoke to Corrine about working as a prostitute, and they instructed her how to dress, how to behave, and how much to charge. Defendants advised Corrine that she should tell people she was 19, and they said they would get identification for her.

When the group arrived in Sacramento, they went to a grocery store, where they met 19-year-old Shadell. Shadell's boyfriend had deserted her at the store, and Shadell was crying and upset. Defendants offered to help by giving her a ride home. Rather than taking her home, defendants brought her with them to a motel, where they rented a room. Shadell asked about her ride home, but her question went unanswered.

Defendant Lewis instructed defendant Grayson to get Corrine "ready because somebody likes her." While Corrine took a shower and Lewis was away from the motel, Grayson told Shadell that since she had gotten into the car with them, Shadell had chosen their lifestyle, and would work as a prostitute for them.

Grayson then pulled a gun from the crotch of her pants, pointed it at Shadell and warned that if "a hoe tries to run away from her pimp, then they kill her or put her in the hospital, either one, but they do something pretty bad to her." Grayson showed Shadell the bullets in the chamber and described them as "the kind that ricochet through your body . . . ."

Grayson said Lewis provided her everything she needed, and said Lewis would do the same for Shadell.

Lewis returned to the motel and took Corrine to a house where she engaged in acts of prostitution. Corrine gave Lewis the $280 she earned that evening.

While Lewis and Corrine were gone, Shadell walked with defendant Grayson to a convenience store to buy some items and then walked back to the motel.

When Lewis returned hours later, he asked Shadell if Grayson had talked to her, and what her reaction was. Shadell replied that she thought their idea was "stupid" and she reiterated that she wanted to leave. Lewis told her she could go, but said she could not use the phone and would not get a ride.

Shadell then discovered that $160 was missing from her purse, and she became very angry. Defendants warned her to be quiet or Lewis would beat her. Lewis said he would get her money back if she stayed with them.

Grayson took Shadell to Stockton Boulevard to solicit for prostitution. Grayson carried her gun with her and showed it to Shadell. She instructed Shadell what to do and say, but they were

1    unsuccessful in their efforts.

2    They returned to the motel.  Later that night, Shadell saw Lewis
     have sex with Corrine in the motel room.
3
4    In the morning, Shadell left while everyone else was asleep, and
     flagged down a passing highway patrol officer. . .

5    At trial, Corrine admitted having sex with Lewis.  She denied
     having worked for defendants and instead testified she had worked
6    as a prostitute on her own.  Officers testified that Corrine had said
     otherwise in previous interviews. . .
7
     The jury acquitted both defendants of kidnapping Corrine, but
8    found defendants guilty of pimping and pandering.  They jury also
     convicted defendant Lewis of one count of lewd and lascivious
9    conduct, and the court found Lewis's priors to be true.

10   Resp't's Lodged Doc. No. 2 at 3-6.

11          Respondent asserts petitioner's habeas petition is time-barred.  The limitations

12   period applicable to this action may be found at 28 U.S.C. § 2244(d)(1).  That statute provides as

13   follows:

14          A 1-year period of limitation shall apply to an application for a writ
            of habeas corpus by a person in custody pursuant to the judgment
15          of a State court.  The limitation period shall run from the latest of –

16          (A) the date on which the judgment became final by the conclusion
            of direct review or the expiration of the time for seeking such
17          review;

18          (B) the date on which the impediment to filing an application
            created by State action in violation of the Constitution or laws of
19          the United States is removed, if the applicant was prevented from
            filing by such State action;
20
            (C) the date on which the constitutional right asserted was initially
21          recognized by the Supreme Court, if that right has been newly
            recognized by the Supreme Court and made retroactively
22          applicable to cases on collateral review; or

23          (D) the date on which the factual predicate of the claim or
            claims presented could have been discovered through the
24          exercise of due diligence.

25          Petitioner's convictions and sentence were affirmed on direct review on August

26   29, 2000.  Petitioner sought review of the decision in the California Supreme Court.  The petition

                                            3

1  for review was denied on December 13, 2000.  Direct review with respect to the convictions at

2  issue in this action became final for purposes of § 2244(d)(1)(A) 90 days later on March 13,

3  2001, when time expired for petitioner to seek a writ of certiorari with respect to the California

4  Supreme Court's denial of petitioner's petition for review.  See Bowen v. Roe, 188 F.3d 1157,

5  1158-59 (9th Cir. 1999) ("We hold that the period of 'direct review' in 28 U.S.C. §

6  2244(d)(1)(A) includes the period within which a petitioner can file a petition for a writ of

7  certiorari from the United States Supreme Court, whether or not the petitioner actually files such

8  a petition.").  If the limitations period began running the next day, on March 14, 2001, it ran out

9  one year later on March 13, 2002 absent tolling.  Petitioner fails to point to any basis for statutory

10  tolling, see 28 U.S.C. §2244(d)(2), or equitable tolling, see Holland v. Florida, 130 S. Ct. 2549,

11  2562 (2010).

12         In his opposition, petitioner asks that the court find that the limitations period did

13  not begin running until the date he found his "alibi witness."   This appears to only be applicable

14  to petitioner's claim that his trial counsel was ineffective for failing to locate petitioner's "alibi

15  witness."  In any case, petitioner does not provide any details in support of this argument,

16  including the fact that he does not indicate when he located his "alibi" witness.

17         Further, it is clear from the record that petitioner was aware of his claim

18  concerning his "alibi witness" at least as late as December, 2010 when petitioner presented the

19  claim to the Superior Court of Sacramento County via collateral review.  Resp't's Lodged Doc.

20  No. 5.  This action was filed well over a year after that in August, 2011.

21         Title 28 U.S.C. § 2244(d)(2) does provide that "the time during which a properly

22  filed application for State post-conviction or other collateral review with respect to the pertinent

23  judgment or claim is pending shall not be counted toward any period of limitation under this

24  subsection."  28 U.S.C. § 2244(d)(2).  It appears petitioner did have collateral actions pending in

25  California's courts between January and October of 2010.  Pet. 7-22.  However, the petitions

26  commencing these actions were not "properly filed" within the meaning of § 2244(d)(2) given

1  the Superior Court's finding that the Superior Court petition was untimely, pet. at 10, and that

2  neither the California Court of Appeal nor the California Supreme Court issued reasoned

3  opinions with respect to petitioner's claims presented in those courts.  See Pace v. DiGuglielmo,

4  544 U.S. 408, 417 (2005) (untimely state court application for collateral relief will not provide a

5  basis for tolling under 28 U.S.C. § 2244(d)(2)); Bonner v. Carey, 425 F.3d 1145, 1148 n.13 (9th

6  Cir. 2005), as amended by 439 F.3d 993 (2006) (lower court's finding of timeliness controls

7  when higher court issues an unexplained denial of an application for collateral relief).

8         Finally, petitioner asserts the court should deem the limitations period waived

9  pursuant to the "actual innocence" exception.  An otherwise time-barred habeas petitioner may

10  proceed with his habeas claims if he can show that, in light of new and reliable evidence, it is

11  more likely than not that no reasonable juror would have found him guilty beyond a reasonable

12  doubt.  Lee v. Lampert, 653 F.3d 929, 938 (9th Cir. 2011).  In order to determine if the habeas

13  petitioner has met the "actually innocent" standard described above, the court considers the new

14  evidence presented in conjunction with the evidence which was presented at trial.  Id.  In the

15  Ninth Circuit, "new" evidence is simply evidence which was not presented at trial.  Griffin v.

16  Johnson, 350 F.3d 956, 962 (9th Cir. 2003).

17         While petitioner asserts he is "actually innocent," he fails to point to any facts in

18  support of his argument in his opposition to respondent's motion to dismiss.  Likewise, he fails

19  to point to sufficient facts in his habeas petition.  It is not even clear whether petitioner asserts he

20  is actually innocent with respect to some or all of his convictions.  In any case, given the nature

21  of the evidence presented at trial, petitioner would have to present evidence which essentially

22  altogether undermines the testimony of Shadell and Corrine that petitioner had sex with Corrine,

23  and the testimony of Shadell regarding petitioner's prostitution related crimes.  See Carriger v.

24  Stewart, 132 F.3d 463, 477 (9th Cir. 1997) (to demonstrate actual innocence, petitioner must

25  present evidence which affirmatively proves innocence rather than simply undercut evidence

26  presented at trial).  While it appears petitioner presented evidence in his state court collateral

1 actions suggesting he had a smaller window of opportunity to commit lewd and lascivious

2 conduct upon Corrine than the evidence at trial indicated, nothing suggests he had no

3 opportunity.  See e.g. Pet at 10-14.  Also, there is nothing suggesting petitioner possesses any

4 evidence which undermines in any significant way the evidence presented at trial supporting

5 petitioner's convictions related to prostitution.

6       In light of the foregoing, the court will recommend that petitioner's application for

7 writ of habeas corpus be dismissed as time barred and this case be closed.

8       Accordingly, IT IS HEREBY RECOMMENDED that:

9       1.  Respondent's November 18, 2011 motion to dismiss be granted; and

10       2.  This case be closed.

11       These findings and recommendations are submitted to the United States District

12 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

13 one days after being served with these findings and recommendations, any party may file written

14 objections with the court and serve a copy on all parties.  Such a document should be captioned

15 "Objections to Magistrate Judge's Findings and Recommendations."  In his objections petitioner

16 may address whether a certificate of appealability should issue in the event he files an appeal of

17 the judgment in this case.  See Rule 11, Federal Rules Governing Section 2254 Cases (the district

18 court must issue or deny a certificate of appealability when it enters a final order adverse to the

19 applicant).  Any reply to the objections shall be served and filed within fourteen days after

20 service of the objections.  The parties are advised that failure to file objections within the

21 \\\\\

22 \\\\\

23 \\\\\

24 \\\\\

25 \\\\\

26 \\\\\

1   specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951

2   F.2d 1153 (9th Cir. 1991).

3    Dated: June 1, 2012

4                                                              _____

5                                                              CAROLYN K. DELANEY

6                                                              UNITED STATES MAGISTRATE JUDGE

7
    1
8   lewi2238.157

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26