1

2

3

4

5

6

7

8                IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOSEPH BO LEWIS,

11              Petitioner,              No. 2:11-cv-2238 GEB CKD P

12        vs.

13   ANTHONY HEDGPETH,                   <u>AMENDED</u>

14              Respondent.              <u>FINDINGS AND RECOMMENDATIONS</u>[1]

15   _____/

16             Petitioner is a California prisoner proceeding pro se with a petition for writ of

17   habeas corpus under 28 U.S.C. § 2254.  He challenges Sacramento County convictions entered in

18   1998 for pimping, procuring for the purposes of prostitution and lewd and lascivious conduct.

19   Petitioner is serving a sentence of 50 years-to-life which was entered in accordance with

20   California's "Three Strikes Law."

21   /////

22

23        [1]  The court amends the findings and recommendations issued June 1, 2012 to correct a
     typographical error on page 4.  In the original findings and recommendations the court indicated
24   "it is clear from the record that petitioner was aware of his claim concerning his "alibi witness" at
     least as late as December, 2010 when petitioner presented the claim to the Superior Court of
25   Sacramento County via collateral review."   The claim was actually presented to the Superior
     Court of Sacramento County in December, 2009.  Resp't's Lodged Doc. No. 5.  The court
26   appreciates counsel for respondent pointing out the error.

1                On direct appeal, the California Court of Appeal described the facts presented at

2    trial as follows:

3                Defendants [petitioner and April Lynne Grayson] were driving
4                from Southern California to Sacramento with a woman named
                 Lucille when they met 14-year-old Corrine, a runaway, outside a
5                restaurant.  They asked Corrine if she would like to accompany
                 them, and Corrine agreed.

6                Defendants spoke to Corrine about working as a prostitute, and
                 they instructed her how to dress, how to behave, and how much to
7                charge.  Defendants advised Corrine that she should tell people she
                 was 19, and they said they would get identification for her.
8

9                When the group arrived in Sacramento, they went to a grocery
                 store, where they met 19-year-old Shadell.  Shadell's boyfriend had
10               deserted her at the store, and Shadell was crying and upset.
                 Defendants offered to help by giving her a ride home.  Rather than
11               taking her home, defendants brought her with them to a motel,
                 where they rented a room.  Shadell asked about her ride home, but
12               her question went unanswered.

13               Defendant Lewis instructed defendant Grayson to get Corrine
                 "ready because somebody likes her."  While Corrine took a shower
14               and Lewis was away from the motel, Grayson told Shadell that
                 since she had gotten into the car with them, Shadell had chosen
15               their lifestyle, and would work as a prostitute for them.

16               Grayson then pulled a gun from the crotch of her pants, pointed it
                 at Shadell and warned that if "a hoe tries to run away from her
17               pimp, then they kill her or put her in the hospital, either one, but
                 they do something pretty bad to her."  Grayson showed Shadell the
18               bullets in the chamber and described them as "the kind that
                 ricochet through your body . . . ."

19               Grayson said Lewis provided her everything she needed, and said
20               Lewis would do the same for Shadell.

21               Lewis returned to the motel and took Corrine to a house where she
                 engaged in acts of prostitution.  Corrine gave Lewis the $280 she
22               earned that evening.

23               While Lewis and Corrine were gone, Shadell walked with
                 defendant Grayson to a convenience store to buy some items and
24               then walked back to the motel.

25               When Lewis returned hours later, he asked Shadell if Grayson had
                 talked to her, and what her reaction was.  Shadell replied that she
26               thought their idea was "stupid" and she reiterated that she wanted
                 to leave.  Lewis told her she could go, but said she could not use

1          the phone and would not get a ride.

2          Shadell then discovered that $160 was missing from her purse, and
           she became very angry.  Defendants warned her to be quiet or
3          Lewis would beat her.  Lewis said he would get her money back if
           she stayed with them.
4
           Grayson took Shadell to Stockton Boulevard to solicit for
5          prostitution.  Grayson carried her gun with her and showed it to
           Shadell.  She instructed Shadell what to do and say, but they were
6          unsuccessful in their efforts.

7          They returned to the motel.  Later that night, Shadell saw Lewis
           have sex with Corrine in the motel room.
8
           In the morning, Shadell left while everyone else was asleep, and
9          flagged down a passing highway patrol officer. . .

10         At trial, Corrine admitted having sex with Lewis.  She denied
           having worked for defendants and instead testified she had worked
11         as a prostitute on her own.  Officers testified that Corrine had said
           otherwise in previous interviews. . .
12
           The jury acquitted both defendants of kidnapping Corrine, but
13         found defendants guilty of pimping and pandering.  They jury also
           convicted defendant Lewis of one count of lewd and lascivious
14         conduct, and the court found Lewis's priors to be true.

15  Resp't's Lodged Doc. No. 2 at 3-6.

16              Respondent asserts petitioner's habeas petition is time-barred.  The limitations

17  period applicable to this action may be found at 28 U.S.C. § 2244(d)(1).  That statute provides as

18  follows:

19         A 1-year period of limitation shall apply to an application for a writ
           of habeas corpus by a person in custody pursuant to the judgment
20         of a State court.  The limitation period shall run from the latest of –

21         (A) the date on which the judgment became final by the conclusion
           of direct review or the expiration of the time for seeking such
22         review;

23         (B) the date on which the impediment to filing an application
           created by State action in violation of the Constitution or laws of
24         the United States is removed, if the applicant was prevented from
           filing by such State action;
25
           (C) the date on which the constitutional right asserted was initially
26         recognized by the Supreme Court, if the right has been newly

                                                3

1         recognized by the Supreme Court and made retroactively
2         applicable to cases on collateral review; or

       (D) the date on which the factual predicate of the claim or
3         claims presented could have been discovered through the
       exercise of due diligence.
4

5         Petitioner's convictions and sentence were affirmed on direct review on August

6  29, 2000.  Petitioner sought review of the decision in the California Supreme Court.  The petition

7  for review was denied on December 13, 2000.  Direct review with respect to the convictions at

8  issue in this action became final for purposes of § 2244(d)(1)(A) 90 days later on March 13,

9  2001, when time expired for petitioner to seek a writ of certiorari with respect to the California

10  Supreme Court's denial of petitioner's petition for review.  See Bowen v. Roe, 188 F.3d 1157,

11  1158-59 (9th Cir. 1999) ("We hold that the period of 'direct review' in 28 U.S.C. §

12  2244(d)(1)(A) includes the period within which a petitioner can file a petition for a writ of

13  certiorari from the United States Supreme Court, whether or not the petitioner actually files such

14  a petition.").  If the limitations period began running the next day, on March 14, 2001, it ran out

15  one year later on March 13, 2002 absent tolling.  Petitioner fails to point to any basis for statutory

16  tolling, see 28 U.S.C. §2244(d)(2), or equitable tolling, see Holland v. Florida, 130 S. Ct. 2549,

17  2562 (2010).

18         In his opposition, petitioner asks that the court find that the limitations period did

19  not begin running until the date he found his "alibi witness."  This appears to only be applicable

20  to petitioner's claim that his trial counsel was ineffective for failing to locate petitioner's "alibi

21  witness."  In any case, petitioner does not provide any details in support of this argument,

22  including the fact that he does not indicate when he located his "alibi" witness.

23         Further, it is clear from the record that petitioner was aware of his claim

24  concerning his "alibi witness" at least as late as December, 2009 when petitioner presented the

25  claim to the Superior Court of Sacramento County via collateral review.  Resp't's Lodged Doc.

26  No. 5.  This action was filed well over a year after that in August, 2011.

1            Title 28 U.S.C. § 2244(d)(2) does provide that "the time during which a properly

2  filed application for State post-conviction or other collateral review with respect to the pertinent

3  judgment or claim is pending shall not be counted toward any period of limitation under this

4  subsection."  28 U.S.C. § 2244(d)(2).  It appears petitioner did have collateral actions pending in

5  California's courts between January and October of 2010.  Pet. 7-22.  However, the petitions

6  commencing these actions were not "properly filed" within the meaning of § 2244(d)(2) given

7  the Superior Court's finding that the Superior Court petition was untimely, pet. at 10, and that

8  neither the California Court of Appeal nor the California Supreme Court issued reasoned

9  opinions with respect to petitioner's claims presented in those courts.  See Pace v. DiGuglielmo,

10  544 U.S. 408, 417 (2005) (untimely state court application for collateral relief will not provide a

11  basis for tolling under 28 U.S.C. § 2244(d)(2)); Bonner v. Carey, 425 F.3d 1145, 1148 n.13 (9th

12  Cir. 2005), as amended by 439 F.3d 993 (2006) (lower court's finding of timeliness controls

13  when higher court issues an unexplained denial of an application for collateral relief).

14            Finally, petitioner asserts the court should deem the limitations period waived

15  pursuant to the "actual innocence" exception.  An otherwise time-barred habeas petitioner may

16  proceed with his habeas claims if he can show that, in light of new and reliable evidence, it is

17  more likely than not that no reasonable juror would have found him guilty beyond a reasonable

18  doubt.  Lee v. Lampert, 653 F.3d 929, 938 (9th Cir. 2011).  In order to determine if the habeas

19  petitioner has met the "actually innocent" standard described above, the court considers the new

20  evidence presented in conjunction with the evidence which was presented at trial.  Id.  In the

21  Ninth Circuit, "new" evidence is simply evidence which was not presented at trial.  Griffin v.

22  Johnson, 350 F.3d 956, 962 (9th Cir. 2003).

23            While petitioner asserts he is "actually innocent," he fails to point to any facts in

24  support of his argument in his opposition to respondent's motion to dismiss.  Likewise, he fails

25  to point to sufficient facts in his habeas petition.  It is not even clear whether petitioner asserts he

26  is actually innocent with respect to some or all of his convictions.  In any case, given the nature

1    of the evidence presented at trial, petitioner would have to present evidence which essentially

2    altogether undermines the testimony of Shadell and Corrine that petitioner had sex with Corrine,

3    and the testimony of Shadell regarding petitioner's prostitution related crimes.  See Carriger v.

4    Stewart, 132 F.3d 463, 477 (9th Cir. 1997) (to demonstrate actual innocence, petitioner must

5    present evidence which affirmatively proves innocence rather than simply undercut evidence

6    presented at trial).  While it appears petitioner presented evidence in his state court collateral

7    actions suggesting he had a smaller window of opportunity to commit lewd and lascivious

8    conduct upon Corrine than the evidence at trial indicated, nothing suggests he had no

9    opportunity.  See e.g. Pet at 10-14.  Also, there is nothing suggesting petitioner possesses any

10   evidence which undermines in any significant way the evidence presented at trial supporting

11   petitioner's convictions related to prostitution.

12          In light of the foregoing, the court will recommend that petitioner's application for

13   writ of habeas corpus be dismissed as time barred and this case be closed.

14          Accordingly, IT IS HEREBY RECOMMENDED that:

15          1.  Respondent's November 18, 2011 motion to dismiss be granted; and

16          2.  This case be closed.

17          These findings and recommendations are submitted to the United States District

18   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

19   one days after being served with these findings and recommendations, any party may file written

20   objections with the court and serve a copy on all parties.  Such a document should be captioned

21   "Objections to Magistrate Judge's Findings and Recommendations."  In his objections petitioner

22   may address whether a certificate of appealability should issue in the event he files an appeal of

23   the judgment in this case.  See Rule 11, Federal Rules Governing Section 2254 Cases (the district

24   court must issue or deny a certificate of appealability when it enters a final order adverse to the

25   applicant).  Any reply to the objections shall be served and filed within fourteen days after

26   service of the objections.  The parties are advised that failure to file objections within the

1  specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951

2  F.2d 1153 (9th Cir. 1991).

3    Dated: June 8, 2012

4                                                      _____

5                                                      CAROLYN K. DELANEY
                                                       UNITED STATES MAGISTRATE JUDGE
6

7  1
8  lewi2238.157(a)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26